IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENITA BLESSING, | : | |
| Plaintiff | : | Civil Action 2:09-cv-762 |
| v. | : | Judge Sargus |
| OHIO UNIVERSITY, | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER DENYING RECONSIDERATION**

This matter is before the Court pursuant to Plaintiff's motion for reconsideration of the Magistrate Judge's May 18, 2010 order denying her two motions for leave to amend (Doc. 24). On March 1, 2010, Plaintiff, a professor at Ohio University who had filed suit claiming that she had been discriminated against by not being re-appointed to her professorship and retaliated against for complaining about discrimination, filed a motion for leave to amend her complaint. She had, in her original complaint, named only Ohio University as a defendant. However, in her first amended complaint she proposed to add as defendants Drs. Roderick McDavis, Pamela Benoit, Benjamin Ogles, and Norman Goda, a claim for disability discrimination, another claim of retaliation for opposing disability discrimination, and a claim under 42 U.S.C. §1983 that she had been deprived of her property interest in her employment without substantive due process. (Doc. 10-1.) On March 17, 2010, Defendant filed a memorandum contra this motion, arguing

1

that the proposed amendment would fail to state a claim. (Doc. 11). Plaintiff filed no reply brief in support of her motion for leave to amend, but then on March 30, 2010 filed a second motion for leave to amend.[1] (Doc. 12.) The proposed second amended complaint was the same as her first, except that it would add an additional claim under 42 U.S.C. §1983 for retaliation for exercise of her right to freedom of speech. Defendant again filed opposition to this motion, and Plaintiff again filed no reply in support of her motion.

On May 18, 2010, the Magistrate Judge denied both motions for leave to amend. (Doc. 19.) He held that permitting Plaintiff's proposed amendments would be futile, because her proposed new pleadings failed to state claims for disability discrimination, substantive due process deprivation, or freedom of speech deprivation upon which the Court could grant relief.[2] Plaintiff has now filed a motion for reconsideration pursuant to 28 U.S.C. §636(b)(1)(A) and Fed. R. Civ. P. 72. She requests that the Court reverse this decision and "permit her to amend her

---

[1] Both Plaintiff's first and second motions to compel briefly described the bases of her new claims, noted that she moved to amend under Fed. R. Civ. Pro. 15(a)(2), and stated that addition of new claims and parties would not prejudice Defendant.

[2] The Magistrate Judge also held, in a footnote, that the second motion for leave to amend was untimely, and that, under Fed. R. Civ. P. 16(b)(4), such untimely motions must show "good cause" for modifying the case schedule to permit them. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Plaintiff had offered no explanation for her dilatory motion. In her objections, Plaintiff maintains that no prejudice would accrue to Defendants by the granting of leave to amend. Because the Magistrate Judge properly denied leave to amend on the merits, the Court need not address this question in detail.

2

original complaint to add a claim under 42 U.S.C. §1983 against Professor Norman Goda and Dean Benjamin Ogles for violation of her First Amendment right to freedom of speech." (Doc. 24 at 2.) Because the sole basis upon which she requests reversal is the improper denial of her First Amendment claim, which appears only in her proposed second amended complaint, the Court concludes that Plaintiff does not object to the Magistrate Judge's order denying her first motion for leave to amend. Furthermore, the Court will address only Plaintiff's proposed First Amendment claim.

### Proposed amendment.

In her proposed pleading, Plaintiff stated:

> 41. Defendants' actions of retaliating against Plaintiff for persistently and publicly expressing a strong viewpoint regarding gender roles in teaching and sexual discrimination in academia and openly criticizing her department for utilizing traditional patriarchial teaching methods and failing to more fully integrate cultural history and feminist pedagogy into the curriculum violated Plaintiff's right to freedom of speech as ensured by the First and Fourteenth Amendments to the United States Constitution.

(Doc. 12-1 at 9.) Plaintiff did not specify the Defendants whom she alleges took this action, but her motion for reconsideration states that she wishes to add a claim against Drs. Norman Goda and Benjamin Ogles for violation of her First Amendment Rights. (Doc. 24 at 2, 3.) The Court will take these to be the alleged infringers.

The following allegations are taken from the proposed second amended complaint (Doc. 12-1). She "was the first European women's and gender historian

3

the department had ever hired." (¶13.) Plaintiff was hired in 2002 as an associate professor in the Department of History at Ohio University. At the time, Dr. Goda was the chairman of the history department, and Dr. Ogles was the Dean of the College of Arts and Sciences. Plaintiff, while teaching at Ohio University, "worked to build course offerings and pursue a research agenda focusing on historical events from a feminine perspective", and

persistently and publicly expressed a strong viewpoint regarding gender roles in teaching and sexual discrimination in academia and openly criticized her colleagues and department for utilizing traditional patriarchial teaching methods and failing to more fully integrate cultural history and feminist pedagogy into the curriculum.

(¶17.) Dr. Blessing's colleagues evidenced a gender bias against her . . . seemingly in retaliation for [her] expression of strong viewpoints regarding gender in academia." (¶18.) In February 2008, she received an unfavorable merit evaluation, which had a negative effect on her merit pay during the subsequent academic year. The evaluation "criticized her 'approach' to gender courses, a comment that Dr. Blessing construed to be an attack on her pedagogical practices." (¶19.) She met with Dr. Goda about the evaluation later that month and "expressed concern that ... the department had discriminated against her on account of her gender". Dr. Goda said that he would address her complaints with regard to the evaluation, but that "he was not being paid enough to address gender discrimination issues." (¶20.) He thereafter sent several "sharply worded communications... questioning her professionalism". (¶21.)

Because she felt that her work environment had grown hostile, Plaintiff filed

4

a formal grievance with the university's institutional equity office in March 2008 "stating her concern that her colleagues in the History Department were discriminating against her on account of her gender." (¶22.) In May 2008, she received a memorandum from Dr. Goda accusing her of having engaged in unprofessional behavior violative of the faculty handbook. (¶23.) A subsequent ethics committee did not sustain any of the charges against her and did not find her to have acted unethically. However, it found her conduct unprofessional and warranting a reprimand. (¶24.) During the pendency of the ethics investigation, Dr. Goda sent Dr. Blessing a letter informing her that she would not be re-appointed to her professorship after the 2009-2010 academic year. "Despite Dr. Blessing's request that this decision be stayed until the ethics charges were resolved, the University stood by the decision to non-renew her contract". (¶25.)

The Magistrate Judge found that permitting Plaintiff to amend the pleadings with her proposed second amended complaint would be futile because it would fail to withstand a motion to dismiss. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986), citing *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980). With respect to her First Amendment claims for retaliation, the Magistrate Judge found that the proposed pleading made no reference at all to Dr. Ogles, and no allegation that Dr. Goda had undertaken any adverse conduct against Plaintiff in retaliation for her exercise of First Amendment rights. The Magistrate Judge found also that Plaintiff was too vague in her description of how she had exercised her First Amendment

5

rights, and that she had pled only internal criticism of her department, which is not protected speech. In her motion for reconsideration, Plaintiff argues that her pleading alleges a better than plausible charge of First Amendment retaliation against Drs. Ogles and Goda, that the Magistrate Judge failed to consider all of her factual allegations, that the speech she alleged constituted protected speech on a matter of public concern, and that she made numerous allegations about adverse actions taken against by Drs. Ogles and Goda in retaliation for her exercise of constitutional rights.

### Stating a claim upon which relief can be granted.

The Court observes in the first place that it can only adjudicate arguments which are presented to it, and that Plaintiff failed to refute any of Defendants' arguments that amendment would be futile when offered the chance of a reply memorandum to do so.[3] As the Magistrate Judge pointed out, in the similar context of a motion to dismiss, failure to respond is taken as acquiescence. *Humphrey v. U.S. Attorney General's Office*, 279 Fed.Appx. 328, 331 (6th Cir. 2008). Further, Plaintiff's objections contain allegations of fact not appearing in the proposed second amended complaint. Regardless of whether these facts would clarify what Plaintiff meant, the salient question is whether Plaintiff's complaint *itself* would state a claim upon which relief can be granted.

When considering whether a complaint fails to state a claim under Fed. R.

---

[3] Plaintiff also did not file a reply memorandum in support of the instant motion for reconsideration.

6

Civ. P. 12(b)(6) a court must construe it in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). Rule 8(a) provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus*, 551 U.S. 89 (2007):

> ... Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

(*Id.* at 93.) However, Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. at 555, 557 (citations omitted).

The Magistrate Judge found that Plaintiff's proposed second amended complaint failed to state a First Amendment claim against Dr. Ogles or Dr. Goda for retaliation. In order to establish a claim under 42 U.S.C. §1983 for First Amendment retaliation, a plaintiff must establish:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness

7

> from continuing to engage in that activity; and (3) that the adverse
> action was motivated at least in part as a response to the exercise of
> the plaintiff's constitutional rights.

*Farmer v. Cleveland Public Power*, 295 F.3d 593, 599 (6th Cir. 2002). The third element requires the plaintiff to prove "a causal connection between the protected conduct and the adverse action." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999); *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010).

### Claims against Dr. Ogles.

The Magistrate Judge correctly noted that the proposed pleading makes no reference to any actions taken by Dr. Ogles, and that the only references to him at all did not relate to the First Amendment claim. Plaintiff asserts:

> Finally, with regard to Dean Ogles, Professor Blessing alleges that the University "stood by the decision to non-renew her contract." This is a reference to Dean Ogles' May 15, 2009 decision to accept the recommendation that Professor Blessing's contract not be renewed for the 2009-2010 school year. This allegation regarding the termination of her employment, coupled with Professor Blessing's assertion that Dean Ogles was aware of at least one of her complaints of discrimination, should be sufficient to satisfy her obligation under §1983 and Fed. R. Civ. P. 12(b)(6) to allege that an adverse action was taken as a result of her protected speech.

(Doc. 24 at 11.) No reference to "Dean Ogles' May 15, 2009 decision to accept the recommendation" appears in Plaintiff's second amended complaint. As she stated, her complaint simply recited that "the University stood by the decision to non-renew her contract". (Doc. 10-1 at ¶25.) That Plaintiff meant "Dr. Ogles" by

8

referring to "the University" is not self-evident, especially given that Ohio University is a party in this case. Nor is it clear that when she said that the University "stood by the decision" she meant that Dr. Ogles took action and "accepted the recommendation". Her complaint would not put Dr. Ogles on notice that Plaintiff meant by this allegation to claim that he, in particular, had violated her civil rights.[4] Similarly, Plaintiff's assertion elsewhere (¶22) that Dr. Ogles was "aware" that Plaintiff had filed a gender discrimination complaint cannot be taken as an allegation that Dr. Ogles *did* something in retaliation for Dr. Blessing exercising her First Amendment right to criticize the History Department's academic standards. Even a reading of the proposed complaint which construes it in a light most favorable to Plaintiff cannot read into it allegations of actions by Dr. Ogles which do not appear.

### Claims against Dr. Goda.

With respect to Dr. Goda, Plaintiff states in her motion:

Professor Blessing's Second Amended Complaint contains numerous references to the adverse actions Professor Goda took against her in response to her protected speech. First, Professor Blessing explicitly alleges that "numerous actions were taken seemingly in retaliation for Dr. Blessing's expression of strong viewpoints regarding gender in

---

[4] Plaintiff argues elsewhere, in a different context, that the Magistrate Judge was wrong to conclude that the University, not Dr. Goda, made the decision not to renew Plaintiff's contract. "However, the Complaint clearly states that the 'University stood by the decision to non-renew her contract,' which merely implies that it did not reverse Professor Goda's employment decision." (Doc. 24 at fn. 4). Plaintiff's assertion implies, in turn, that whatever adverse action was taken with respect to Plaintiff's renewal was taken by Dr. Goda, not "the University" or Dr. Ogles.

9

> academia." (Second Amended Complaint at ¶18.) The next several
> paragraphs of the Complaint then explain how Professor Blessing's
> merit evaluations and merit pay increases were negatively affected by
> her viewpoints. (Second Amended Complaint at ¶¶18-19.) Professor
> Goda's act of penalizing Professor Blessing on her evaluations and
> related pay increases constitutes an adverse action as it would deter
> an ordinary person from engaging in similar speech in the future.
>
> Additionally, Professor Blessing alleges that on one occasion, shortly
> after expressing concern to Professor Goda that she was being
> discriminated against on account of her gender, Professor Goda began
> openly questioning her professionalism. (Second Amended Complaint
> at ¶¶20-21.) The Complaint further states that Professor Goda
> instituted an ethics investigation into what he deemed Professor
> Blessing's "troublesome and unprofessional" behavior and that he was
> responsible for the decision not to reappoint her to her professorship
> following the conclusion of the 2009-2010 academic year. (Second
> Amended Complaint at ¶¶24-25). Under these circumstances,
> Professor Blessing has, at a minimum, alleged facts to show that
> Professor Goda took a myriad of adverse actions against her as a result
> of her constitutionally protected speech.

(Doc. 24 at 10-11, some citations omitted.)

Plaintiff's allegation at ¶18 that "the actions of Dr. Blessing's colleagues evidenced a gender bias against her in a variety of ways and numerous actions were taken seemingly in retaliation" refers not to Dr. Goda in particular, but to her "colleagues" in general. Furthermore, a base assertion that "actions were taken" is too vague to provide the necessary allegations of adverse actions. Although Plaintiff's complaint describes the unfavorable evaluation she received in February 2008, and that it affected her pay, it does not state that Dr. Goda was responsible for the evaluation, but rather "the Department". Although Plaintiff pled that Dr. Goda was the chairman of her department, she refers elsewhere to her colleagues

10

collectively as the Department. *See, e.g.*, ¶18 (points deducted on merit evaluation because members of the Department were concerned about Plaintiff's advising of the history club); ¶21 (number of colleagues began alienating Plaintiff from the rest of the Department); ¶22 (grievance that colleagues in the Department were discriminating against her). Plaintiff now states in her motion that Dr. Goda, as chairman of the department, was responsible for overseeing the evaluation process, but this allegation does not appear in her proposed complaint. As drafted, it does not place responsibility upon Dr. Goda for Plaintiff's unfavorable evaluation, and in fact distributes it amongst her colleagues in general.

The proposed complaint likewise does not support Plaintiff's new assertion that Dr. Goda "was responsible for the decision not to reappoint her to her professorship". It states at ¶25 that he sent her a letter informing her that she would not be reappointed, and that, after Plaintiff asked for the reappointment decision to be stayed, "the University stood by the decision to non-renew her contract". Plaintiff states in her objections that she meant, by implication, that the University stood by *Dr. Goda's* decision not to renew her contract. However, her proposed complaint, again, does not charge Dr. Goda with responsibility for deciding whether or not to renew Plaintiff's contract, but merely alleges that he informed her that it would not be renewed. The paragraph assigns hiring authority only to the University, and does not otherwise say by whom Plaintiff "would not be re-appointed". The requirement of Rule 12(b)(6) that allegations be construed in Plaintiff's favor does not exempt her from having to specify the person retaliating

11

against her.

The actions which Plaintiff does plead that Dr. Goda took are that, following a meeting in which she complained that she had been subjected to gender discrimination in her merit evaluation, he sent "several sharply worded communications... questioning her professionalism", and that, following her filing of a formal grievance about gender discrimination, he sent her a memorandum accusing her of unprofessional behavior about which she was referred to an ethics committee. (¶¶20-24.) However, her proposed pleading links these actions causally to her formal complaints of gender discrimination, not her general practice of "persistently and publicly" expressing her viewpoints about teaching methods. In Paragraph 20, Plaintiff alleges that she met with Dr. Goda on February 19, 2008, to express concern that the department had discriminated against her on account of gender in giving her a low score on her February merit evaluation. In Paragraph 21, "[s]hortly after registering her complaint with Dr. Goda," he sent her communications questioning her professionalism. Then, on March 7, 2008, Plaintiff filed a formal grievance with the Director of the Institutional Equity Office, stating that her colleagues were discriminating against her on the basis of gender. (¶22.) On May 8, 2009, Plaintiff received the memorandum from Dr. Goda alleging violations of the faculty handbook, and these charges were subsequently considered by an ethics committee. (¶22-23.)

Even with the allegations of her complaint construed most strongly in her favor, Plaintiff does not plead that Dr. Goda's actions in questioning her

12

professionalism or accusing her of unprofessional behavior were in retaliation for her general practice of expressing views and criticism about gender in academia, but rather that they were in retaliation for having made complaints that she had been discriminated against because of her gender. However, "Title VII provides the exclusive remedy when the only §1983 cause of action is based on a violation of Title VII." *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984). *See also Johnson v. City of Memphis*, 73 Fed.Appx. 123, 129-30 (6th Cir. 2003). Any claim by Plaintiff that she was retaliated against for claiming job discrimination is subsumed into her Title VII claim, because that remedy pre-empts §1983. Were it not so, "a complainant could avoid most if not all of" the burdens of a formal discrimination claim by simply filing a §1983 action. *Id.* at 103.

Plaintiff, in her motion for reconsideration, posits both that her claim of retaliation against Dr. Goda is founded both upon retaliation for the formal complaints of discrimination against her addressed above and, more generally, her "persistently and publicly expressing a strong viewpoint" about gender roles in teaching, sex discrimination, and the use of traditional teaching methods in academia. (¶41.) Claims for conduct violative of *both* Title VII (discrimination) and the Constitution (retaliation for public speech) are not pre-empted by Title VII. *Day*, 749 F.2d at 1205. Consequently, if Plaintiff were to allege that Dr. Goda retaliated against her for more than just her complaints to him and to the Institutional Equity Office, but also for making other protected speech, she would still be able to bring a claim under §1983. However, Plaintiff's allegations of

13

"persistently" expressing her views are too vague to offer a basis to draw a causal connection between some particular action on her part and some particular action on the part of Dr. Goda.

Plaintiff supplies several cases about constitutionally protected public speech. It is illustrative, however, that each case involves a plaintiff who made some particular speech on some particular occasion. *See Dambrot v. Cen. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995) (coach used offensive language in a locker room speech); *Warren v. Ohio Dep't of Public Safety*, 24 Fed.Appx. 259 (6th Cir. 2001) (employee met with legal counsel); *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151 (6th Cir. 2004) (employee met with employers), *Strouss v. Michigan Dep't of Corrections*, 250 F.3d 336 (6th Cir. 2001) (employee filed EEOC charges), *Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000) (hearing officer issued decisions). As the Sixth Circuit Court of Appeals put it, applying the more lenient pre-*Twombly* Rule 12(b)(6) standard:

> "'A complaint need not set down in detail all the particularities of a plaintiff's claim,'" but must simply "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gazette* [*v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)]. It is plain that, although liberal, the standard does require that a plaintiff plead more than bare legal conclusions. "In practice a ... complaint must contain either direct or inferential alleagtions regarding all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (internal quotation marks omitted) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). This court has held, in the context of a civil rights claim, that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). "Some factual

14

basis for such claims must be set forth in the pleadings." *Id.*

*Lilliard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). A claim under §1983 cannot be founded upon allegations that the plaintiff was generally in the habit of exercising her constitutional rights, and that the defendant eventually retaliated. This would amount to the kind of "naked assertion" held in *Twombly* to be insufficient. Moreover, it would permit any employee who had suffered an adverse employment action to claim vaguely that the action had been in retaliation for her tendency to exercise her constitutional rights, not any particular exercise.

## Conclusion.

Therefore, the Court finds that Plaintiff's proposed second amended complaint would fail to state a claim under 42 U.S.C. §1983 against Dr. Ogles for retaliation for exercise of First Amendment rights. Furthermore, her claim of retaliation against Dr. Goda, as pled, is based only upon allegations that he retaliated against her for reporting sex discrimination, and would be pre-empted by her Title VII claim against Ohio University. Amendment to add these claims would therefore be futile. To the extent that her motion for reconsideration suggests that Plaintiff intended to propose an independent §1983 claim against Dr. Goda based upon other First Amendment violations, Plaintiff's description of her exercise of free speech rights is too vague and conclusory to put the proposed defendant on notice of what was supposed to have motivated his alleged adverse action.

15

Plaintiff's motion for reconsideration (Doc. 24) is accordingly **DENIED**.

8-27-2010
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

16